<u>IN THE UNITED STATES DISTRICT COURT</u>
<u>FOR THE EASTERN DISTRICT OF PENNSYLVANIA</u>

```
THOMAS CARTER, III,                )
WILLIAM A. CARTER,                 )   Civil Action
CHARLES H. CURRY,                  )   No. 08-cv-05421
ROBERT L. DESROSIERS,              )
STEVEN D. FORMAN,                  )
GREGORY P. HEIL,                   )
RICHARD E. HEISERMAN,              )
ELLERY F. JOYNES,                  )
EDWARD J. KAZLO,                   )
STEPHEN I. LYLES, JR.,             )
GENERO T. MITCHELL, JR.,           )
ROBIN M. MITCHELL,                 )
ARTHUR POOLE, JR.,                 )
EDWARD W. PORTER,                  )
THOMAS V. WATERS and               )
IRA T. WATTS,                      )
                                   )
            Plaintiffs             )
                                   )
        vs.                        )
                                   )
COMMONWEALTH OF PENNSYLVANIA,       )
PENNSYLVANIA STATE POLICE,          )
                                   )
            Defendant              )
```

                    *    *    *

APPEARANCES:

          JOAN E. CLARKE, ESQUIRE
               On behalf of Plaintiffs


          RANDALL J. HENZES, ESQUIRE
               On behalf of Defendant

                    *    *    *

                <u>O P I N I O N</u>

JAMES KNOLL GARDNER,
United States District Judge

This matter is before the court on Defendant's Motion to Dismiss filed December 18, 2008 by defendant Commonwealth of Pennsylvania, Pennsylvania State Police.[1]

On January 30, 2009, plaintiffs filed their answer to defendant's motion.  Plaintiffs' answer was titled Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss.  Oral argument was held before me on July 7, 2009, and the matter was taken under advisement.

For the reasons expressed in this Opinion, I grant in part and deny in part Defendant's Motion to Dismiss. Specifically, Defendant's Motion to Dismiss Counts II and III of plaintiffs' complaint is granted by agreement of counsel, and Counts II and III are dismissed from the complaint. I deny Defendant's Motion to Dismiss Count I because I conclude that plaintiffs have sufficiently pled a cause of action upon which relief can be granted in Count I.

<u>COMPLAINT</u>

On November 17, 2008 plaintiffs filed a three-count Complaint - Civil Action.

Count I of the complaint alleges claims of race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII").

---

[1]     On December 18, 2008, defendant filed a Memorandum of Law of Defendant Pennsylvania State Police in Support of Its Motion to Dismiss.

Count II alleges claims of race discrimination under 42 U.S.C. §§ 1981 and 1981a ("Section 1981").

Count III alleges claims of age discrimination in violation of the Age Discrimination Employment Act, 29 U.S.C. §§ 621 to 634 ("ADEA").

JURISDICTION

Jurisdiction is based on federal question jurisdiction pursuant to 28 U.S.C. § 1331(a).  The court also has original jurisdiction pursuant to 42 U.S.C. § 2000e-5(f)(3) and 29 U.S.C. § 2617(a)(2).

VENUE

Venue is proper pursuant to 42 U.S.C. § 2000e-5(f)(3), 29 U.S.C. § 2617(a)(2) and 28 U.S.C. § 1391 because the events giving rise to the claims allegedly occurred in King of Prussia, Montgomery County, Pennsylvania, which is in this judicial district.

STANDARD OF REVIEW

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  A 12(b)(6) motion requires the court to examine the sufficiency of the complaint.  Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957) (abrogated in other respects by Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

-3-

Ordinarily, a court's review of a motion to dismiss is limited to the contents of the complaint, including any attached exhibits. See <u>Kulwicki v. Dawson</u>, 969 F.2d 1454, 1462 (3d Cir. 1992).

Except as provided in Federal Rule of Civil Procedure 9, a complaint is sufficient if it complies with Rule 8(a)(2). That rule requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. <u>Twombly</u>, 550 U.S. at 555, 127 S.Ct. at 1964, 167 L.Ed.2d at 940.

Additionally, in determinating the sufficiency of a complaint, the court must accept as true all well-pled factual allegations and draw all reasonable inferences therefrom in the light most favorable to the non-moving party. <u>Worldcom, Inc. v. Graphnet, Inc.</u>, 343 F.3d 651, 653 (3d Cir. 2003). Nevertheless, a court need not credit "bald assertions" or "legal conclusions" when deciding a motion to dismiss. <u>In re Burlington Coat Factory Securities Litigation</u>, 114 F.3d 1410, 1429-30 (3d Cir. 1997).

In considering whether the complaint survives a motion to dismiss, both the District Court and the Court of Appeals review whether it "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." <u>Twombly</u>, 550 U.S. at 562, 127 S.Ct. at 1969, 167 L.Ed.2d at 944 (quoting

-4-

Car Carriers, Inc. v. Ford Motor Company, 745 F.2d 1101, 1106
(7th Cir. 1984)(emphasis in original)); Haspel v. State Farm
Mutual Automobile Insurance Company, 241 Fed.Appx. 837, 839
(3d Cir. 2007).

<u>FACTS</u>

Based upon the averments in plaintiffs' Complaint -
Civil Action, which I must accept as true under the foregoing
standard of review, the pertinent facts are as follows.

The Pennsylvania State Police ("PSP") has a history of
employment discrimination against minority state troopers.  In
1973 a class action lawsuit was filed against PSP because of its
discriminatory hiring and promotion policies and practices.[2]

As a result of this lawsuit, PSP entered into a Consent
Decree in 1974 in which it agreed to develop job-related hiring
and promotion standards.  The Consent Decree was instrumental in
increasing the percentage of minority troopers admitted and
promoted within the PSP.  As a result, there was an increase in
the number of minority state troopers within the state police,
particularly at the King of Prussia barracks.[3]

Each plaintiff is a present or former employee of PSP,
over the age of 40, employed as a state trooper at Troop T's King

---

[2]     Plaintiffs' Complaint - Civil Action filed November 17, 2008
("Complaint") at ¶¶ 67 and 68.

[3]     Complaint ¶¶ 70 and 71.

-5-

of Prussia barracks.[4]  In addition to King of Prussia, Troop T has barracks located in the Poconos, Bowmansville, Newville, Everett, Somerset, Gibsonia, Highspire and New Stanton, Pennsylvania.[5]

At all relevant times the King of Prussia barracks had the largest number of African American troopers within Troop T.[6] Specifically, 25 of the approximately 35 troopers stationed at the King of Prussia barracks were African American, 1 was Hispanic and 1 was Asian.[7]

The King of Prussia barracks was exclusively assigned to patrol the Pennsylvania Turnpike, to control traffic, conduct accident investigations, and provide the highest level of security and protection to the public.[8]  In addition, as highway construction projects increased on the Turnpike, troopers from the King of Prussia barracks were regularly and consistently assigned to work the construction zone areas of the Turnpike during normal working hours and as overtime.[9]  While working the construction zone detail, plaintiffs manned the construction zones, assisted the crews with the safe movement of construction

---

[4]     Complaint ¶ 65.

[5]     Complaint ¶ 66.

[6]     Complaint ¶ 72.

[7]     Complaint ¶ 73.

[8]     Complaint ¶ 74.

[9]     Complaint ¶ 75.

equipment and erected new traffic patterns to reduce traffic congestion.[10]

In return for the service provided by the state troopers, the construction company performing the specific construction project would pay the Pennsylvania Turnpike Commission, who in turn made payments to PSP, for the troopers salary and overtime.[11]  The overtime compensation earned by the troopers has a direct impact on a trooper's future retirement earnings because it is included in his or her yearly salary earnings.  Under the Pennsylvania State Employment Retirement System, state troopers are eligible for retirement benefits of 50% of their highest year's salary after 20 years of service or 75% of the highest year's salary after 25 years of service.[12]

Prior to June 8, 2006 there was no official overtime policy at the King of Prussia barracks,[13] and construction overtime was assigned on an equal basis to any trooper, regardless of age or race,[14] who was off work or off duty.  In early 2006 Captain Rodney J. Patterson of Troop T became concerned about the amount of overtime earned by two minority

---

[10]     Complaint ¶ 76.

[11]     Complaint ¶ 78.

[12]     Complaint ¶¶ 80 and 81.

[13]     Complaint ¶ 82.

[14]     Complaint ¶¶ 82 and 83.

troopers at the King of Prussia barracks, Gary P. Wells (an African American) and Joseph M. Melendez (an Hispanic).  Both were over the age of 40.[15]

Moreover, according to the Enlisted Premium Top 150 Report State Fiscal Year 2005-2006, which reports the top 150 earners within PSP, not one trooper from the King of Prussia barracks was included in the top 58 earners.[16]  However, while Captain Patterson scrutinized the overtime hours earned by minority troopers Wells and Melendez, Lieutenant Thomas F. Traister, the Eastern Section Commander, ordered Sergeant James P. Flynn, the PSP Pocono Station Commander, to "take care" of Corporal Corey L. Welch, a White[17] trooper from the Pocono barracks, in terms of his ability to increase his overtime hours as he neared retirement.[18]

On June 8, 2006, Lieutenant Richard Dressler, on behalf of Captain Patterson, prohibited 13 troopers from Troop T from working construction zone overtime for approximately one month. The King of Prussia barracks was the only barracks in Troop T

---

[15]     Complaint ¶ 89.

[16]     Complaint ¶ 91.

[17]     Throughout their complaint, plaintiffs refer to the race of majority troopers as "White", with the exception of paragraph 92 where plaintiffs referred to "a white trooper" (with a lower case "w"). Accordingly, I use the terminology "White" throughout this Opinion.

[18]     Complaint ¶¶ 92 and 93.

subject to those overtime restrictions.[19]  This "cease and desist list" targeted ten African Americans,[20] eight of whom were over the age of 40,[21] and three White troopers.[22]

The troopers subject to this cease and desist list included five plaintiffs: William A. Carter, Edward J. Kazlo, Genero T. Mitchell, Jr., Thomas V. Waters and Ira T. Watts.[23] Plaintiffs Carter, Mitchell, Waters and Watts are each African Americans over age 40.  Plaintiff Kazlo is White over age 40.[24]

Typically, overtime for construction zone projects remained within the vicinity of the closest barracks and was not outsourced to other barracks.[25]  The June 8, 2006 cease and desist list was the first time the King of Prussia barracks outsourced construction overtime to other, less experienced barracks, farther away.[26]

Even though the King of Prussia troopers on the June 8, 2006 cease and desist list were available and qualified to work the assigned overtime, PSP was so pervasive in its attempts to

---

[19]    Complaint ¶ 101.

[20]    Complaint ¶ 96.

[21]    Complaint ¶ 97.

[22]    Complaint ¶ 96.

[23]    Complaint ¶ 98.

[24]    Id.

[25]    Complaint ¶ 104.

[26]    Complaint ¶ 105.

limit the earnings of plaintiffs that they ordered King of Prussia troopers to work construction work projects only during normal work hours and outsourced overtime to other stations.[27]

On August 25, 2006 a second cease and desist list was issued verbally.[28]  This list prohibited six troopers from the King of Prussia barracks from working overtime.[29]  This list included five African American troopers over the age of 40 and one White trooper over 40.[30]  The second cease and desist list included five plaintiffs: William Carter, Kazlo, Genero Mitchell, Arthur Poole, Jr. and Watts.[31]  Plaintiffs Carter, Mitchell, Poole and Watts are African Americans and plaintiff Kazlo is White.[32]

On November 15, 2006 a third cease and desist list was issued verbally to plaintiff Charles H. Curry.[33]  Trooper Curry was prohibited from working overtime for the remainder of 2006

---

[27]    Complaint ¶¶ 103 and 105.

[28]    Complaint ¶ 112.

[29]    Id.

[30]    Complaint ¶ 113.

[31]    Id.

[32]    Complaint ¶¶ 16, 37, 43, 49 and 58.

[33]    Complaint ¶ 116.

because his overtime hours were allegedly too high.[34]  Trooper Curry is an African American over age 40.[35]

While these three cease and desist directives were issued to the King of Prussia barracks, no other barracks was subjected to overtime restrictions.[36]  PSP purposefully implemented and adopted these overtime restrictions to discriminate against plaintiffs on the basis of their race and age.[37]  For example, Major Jon D. Kurtz, Area 1 Commander of the Pennsylvania Turnpike, said that "no trooper as long as I am a major will retire making the same pension that I worked so long for."[38]  This sentiment was reinforced by Sergeant Kevin T. Krupiewskik, who said, "it's about time they were put in their place because for years they were riding around in fancy cars with big rims."[39]

Additionally, PSP ordered the King of Prussia barracks to determine overtime eligibility for troopers based on total dollars earned as opposed to hours worked.[40]  In late August 2006, plaintiffs grieved PSP's overtime restriction policy to the

---

[34]     Complaint ¶ 117.

[35]     Complaint ¶ 19.

[36]     Complaint ¶ 101.

[37]     Complaint ¶ 133.

[38]     Complaint ¶ 118.

[39]     Complaint ¶ 119.

[40]     Complaint ¶ 114.

-11-

Grievance Board of the Pennsylvania State Troopers Association ("the Board").[41]  On January 30, 2007 the Board determined that PSP discriminated against the King of Prussia barracks by using dollars earned as opposed to hours worked in determining which troopers should be restricted from working overtime.[42]  The Board ordered PSP to remove the overtime restrictions immediately.[43]

However, at the time of the Board decision, the construction season had already ended, and plaintiffs had already lost the ability to work construction overtime to obtain their highest earning year for the purpose of calculating their retirement benefits.[44]  In addition, several plaintiffs had retired in 2007, including plaintiffs Steven D. Foreman, Kazlo, Genero Mitchell, Poole, Keith W. Porter, Waters and Watts, and lost the opportunity to increase their retirement benefits.[45]

As a result of the Grievance Board's decision in mid-2007, PSP implemented a new 400-hour limit per trooper on overtime.[46]  However, despite the new overtime policy, overtime

---

[41]    Complaint ¶ 120.

[42]    Complaint ¶ 121.

[43]    Complaint ¶ 122.

[44]    Complaint ¶ 123.

[45]    Complaint ¶ 124.

[46]    Complaint ¶ 125.

still was being assigned and monitored discriminatorily at the
Troop T King of Prussia barracks.[47]

Specifically, on August 22, 2007, PSP issued a fourth
written cease and desist list prohibiting six minority troopers
from working any additional overtime, stating that they had
reached the newly adopted 400-hour maximum rule.[48]  One of the
troopers affected, Mario Battistini, was Hispanic.  The other
five were African American plaintiffs Thomas Carter, III, William
Carter, Curry, Ellery F. Joynes and Robin M. Mitchell.  All six
minority troopers were over age 40.[49]

However, other troopers throughout the department
continued to receive overtime hours for exceeding the 400-hour
restriction.[50]  For example, Dwight Locke, a White trooper over
age 40, stationed at Troop T Gibsonia barracks was not subjected
to the 400-hour restriction.  A department overtime status report
dated October 5, 2007 showed that Trooper Locke worked over 619
overtime hours.  His total overtime hours for 2007 totaled 800
hours.[51]

---

[47]     Complaint ¶ 126.

[48]     Complaint ¶ 127.

[49]     Complaint ¶ 128.

[50]     Complaint ¶ 129.

[51]     Complaint ¶¶ 130-132.

Defendant PSP purposefully and maliciously adopted and implemented these overtime restrictions to discriminate against plaintiffs on the basis of race and age.[52]

CONTENTS

Defense Contentions

Defendant Pennsylvania State Police seeks to dismiss Counts II and III of plaintiffs' Complaint pursuant to Fed.R.Civ.P. 12(b)(1), for lack of subject matter jurisdiction. Defendant argues that plaintiffs' ADEA and Section 1981 claims are barred under the Eleventh Amendment to the United States Constitution.  Defendant also contends that plaintiffs fail to allege a valid Title VII claim, and therefore Count I should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Defendant argues that the Eleventh Amendment immunizes states and state agencies, such as defendant, from federal court suits by private parties.  Defendant relies on the decision of the United States Supreme Court in Seminole Tribe of Florida v. Florida, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) for this proposition.  Furthermore, relying on the case of Hans v. State of Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1980), defendant contends that the state remains immune from

---

[52]     Complaint ¶ 133.

suit even if the plaintiff were a citizen of the state being sued.

Moreover, defendant contends that immunity applies no matter what relief is being sought.  Defendant relies on <u>Cory v. White</u>, 457 U.S. 85, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982) for this proposition.  Although a state may waive its immunity, the Commonwealth of Pennsylvania has not done so.  Thus defendant argues that plaintiffs' claims in Counts II and III should be dismissed.

Defendant further contends that plaintiffs' Title VII claim in Count I should also be dismissed for failure to state a claim upon which relief can be granted.  Defendant acknowledges that Title VII prohibits employment discrimination on the basis of race, color, religion, sex or national origin.  42 U.S.C. § 2000e-2.  However, defendant argues that plaintiffs have not demonstrated that they were discriminated against because of their race.

Defendant avers that to state a claim for racial discrimination plaintiffs must show that (1) they are members of a protected class; (2) they are qualified for the position; (3) they suffered an adverse employment action; and (4) similarly situated persons outside of plaintiffs' protected class were treated more favorably, or the circumstances of the adverse employment action gave rise to an inference of discrimination.

<u>Jones v. School District of Philadelphia</u>, 198 F.3d 403, 410-411 (3d Cir. 1999).

However, defendant contends that because plaintiffs consist of both White and minority troopers, the opportunity to work overtime hours was denied to all races.  Therefore, defendant asserts that Title VII was not violated.  Accordingly, defendant argues that plaintiffs have not stated a claim upon which relief can be granted.

### Contentions of Plaintiffs

As stated above, in Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss and at oral argument on July 7, 2009, plaintiffs' concede that Counts II and III should be dismissed because of the immunity clause of the Eleventh Amendment.

However, plaintiffs contend that Count I, their Title VII claim, should not be dismissed.  Plaintiffs assert that PSP arbitrarily implemented and enforced overtime restrictions on the King of Prussia barracks with the specific intent to limit the salaries and pension benefits of African American troopers who were stationed there.

As noted, defendant argues that because White troopers were also subject to these overtime restrictions, PSP did not racially discriminate.  In response, plaintiffs contend that just because some White troopers were unintended recipients of PSP's

-16-

discriminatory policies, that does not mean that PSP did not discriminate against the African American troopers.

Relying on <u>Trafficante v. Metropolitan Life Insurance Company</u>, 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972), plaintiffs contend that non-minorities have standing to challenge discriminatory practices where they were indirectly injured. <u>Trafficante</u> deals with race discrimination in violation of Section 810(a) of the Fair Housing Act, 42 U.S.C. § 3610(a). The Fair Housing Act is Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3601-3631.

Plaintiffs analogize Title VIII (which was addressed in <u>Trafficante</u>) to their Title VII claim here. In <u>Trafficante</u> the United States Supreme Court stated that Title VIII is "broad and inclusive" and not limited to direct targets of the discriminatory acts. 403 U.S. at 209, 93 S.Ct. at 367, 34 L.Ed.2d at 419.

Plaintiffs also analogize this case to the gender discrimination claim in <u>Anjelino v. New York Times Company</u>, 200 F.3d 73, 92 (3d Cir. 1999), in which the Third Circuit Court of Appeals stated that indirect victims of gender discrimination can assert claims under Title VII so long as the plaintiffs bring colorable claims of injury-in-fact.

Plaintiffs also compare the alleged discrimination in this case to that of the racial discrimination which took place in the Chicago crime lab in <u>Boyd v. Illinois State Police</u>, 2001 U.S.Dist. LEXIS 3792 (N.D.IL March 27, 2001)(Lefkow, J.). Plaintiffs here contend that the defendant in <u>Boyd</u> asserted the same argument as advanced by defendant PSP; that is, that because the entire group of forensic scientists, which included both minorities and non-minorities, were treated the same, no racial discrimination occurred.  Plaintiffs argue that because the district court in <u>Boyd</u> sided with the plaintiffs and found that the associational discrimination alleged in <u>Boyd</u> states a claim on which relief may be granted, that plaintiffs here should prevail as well.

Plaintiffs assert that because of defendant PSP's discriminatory practices against the minority troopers, the White troopers suffered a reduction in salary and pension benefits just as did the minority troopers.  Plaintiffs also contend that the targets of PSP's overtime restrictions were the African American plaintiffs at the King of Prussia barracks, and unfortunately the White plaintiffs were subject to the same restrictions.

Plaintiffs assert that the White troopers were the unintended victims of PSP's discriminatory practices.  Plaintiffs further contend that but for PSP's discriminatory practices toward the African American troopers at the King of Prussia

barracks, the White plaintiffs would not have suffered any salary or pension benefit losses, but would have been treated similarly to their counterparts in other barracks.

Thus plaintiffs contend that PSP discriminated against the minority troopers in the King of Prussia barracks by withholding overtime hours.  The White troopers were unintended, but just as affected, victims of those actions.  Therefore, plaintiffs argue, PSP violated Title VII by acting in a racially discriminatory manner toward the King of Prussia barracks in the assignment of overtime hours, and both the direct and indirect targets of such discrimination have a right to challenge those acts.

<u>DISCUSSION</u>

Defendant contends that plaintiffs cannot sustain a claim of racial discrimination against PSP because similarly situated minority and White King of Prussia troopers were each denied overtime hours.  I disagree.

It is well-established in this Circuit that non-minorities have standing to sue in discrimination claims if they can demonstrate an injury-in-fact.  <u>Anjelino</u>, 200 F.3d at 88-92. Accordingly, minorities are not precluded from pursuing racial discrimination claims simply because non-minorities were also injured by a defendant's discriminatory acts.

-19-

Those on the "blacklist" are not the only victims in a discrimination case.  _Trafficante_, 409 U.S. at 211, 93 S.Ct. at 368, 34 L.Ed.2d at 420.  In _Trafficante_ the Supreme Court ruled that all those injured, non-minorities as well as minorities, by discriminatory practices have standing to sue in a Title VIII claim.  409 U.S. at 212, 93 S.Ct. at 368, 34 L.Ed.2d at 420.[53]

Using a prior Title VII case, _Hackett v. McGuire Brothers Inc._, 445 F.2d 442 (3d Cir. 1971), and _Trafficante_ as its references, the Third Circuit noted that Title VIII is analogous to Title VII, in that anyone who is injured by discriminatory practices may file a claim as a "person aggrieved."  _Anjelino_, 200 F.3d at 90 n.23.

The Third Circuit in _Angelino_ determined that males have standing to sue at the pleading stage in a gender discrimination claim so long as the males set forth "specific facts that indicate that [they have] been injured in fact..., that the challenged action is casually connected to the

---

[53]    In _Trafficante_, tenants of an apartment complex challenged allegedly racially discriminatory practices of the landlord.  The United States Supreme Court held that the tenants of the apartment complex who alleged that because of the landlord's discrimination against non-whites, the tenants lost the social benefits of living in an integrated community, missed business and professional advantages that would have accrued from living with members of minority groups, and suffered from being stigmatized as residents of a white ghetto, came within the definition of persons aggrieved in the Civil Rights Act of 1968, in that they had been injured by a discriminatory housing practice, and the tenants had standing to sue.

actual...injury, and that the injury may be redressed by the
cause of action." Id. at 88.

In Anjelino, the male plaintiffs alleged they were
injured by gender discrimination targeted at their female co-
workers.  All of the mail room extras were placed on a hiring
list according to their seniority.  However, the mail room
stopped hiring extras once a female was at the top of the list.
This meant that all the men listed below females were also not
hired and therefore suffered because of the discrimination
directed toward the female employees.  200 F.3d at 92.

So long as a plaintiff has been "sufficiently
aggrieved," as the plaintiffs were in Anjelino, and has pled
enough "injury in fact to present a genuine case or controversy
in the Article III sense," then the plaintiff has standing to
sue.  Anjelino, 200 F.3d at 90 (quoting Hackett, 445 F.2d
at 446-447).

In addition to the mandatory authority of the Third
Circuit decision in Anjelino, I find persuasive the decision of
United States District Judge Joan Humphrey Lefkow of the United
States District Court for the Northern District of Illinois,
Eastern Division in Boyd v. Illinois State Police, supra.

In Boyd, plaintiffs were African American and White
forensic scientists who were transferred from the Chicago police
crime laboratory to a different forensic lab, the ISP Forensic

Science Center.  Plaintiffs were 19 of the 51 transferred scientists.  Twenty-two of the transferees were African American, 5 were Hispanic, and 24 were White.  Accordingly, the 27 minority scientists comprised the majority of the 51 scientists transferred.

The Boyd plaintiffs alleged that defendants (the Illinois State Police and its director) violated Title VII by discriminating against them because of their race.  They alleged discrimination in determining their compensation and in the terms and conditions of their employment.  Once plaintiffs were transferred, ISP applied less favorable salary terms to the transferees than to the newly hired, non-minority, non-transferees.  Boyd at *25.  The Boyd plaintiffs also alleged that defendants illegally retaliated against them for complaining about the discrimination.

The parties filed cross-motions for summary judgment. Defendants contended that the entire group of forensic scientists, which included both minorities and non-minorities, were treated the same and, therefore, no racial discrimination occurred.  Plaintiffs contended, on the other hand, that because the transferred scientist group was "majority minority", defendants perceived the group as minority, and their motive for discriminating against the group was racial.

Judge Lefko agreed with plaintiffs on their Title VII claim.  She rejected defendant's argument that no racial discrimination occurred just because minorities and non-minorities were treated the same.  Boyd, 2001 U.S.Dist. LEXIS at *23.  Specifically, she held that the associational discrimination alleged by the Boyd plaintiffs states a claim on which relief may be granted.  Judge Lefko found the evidence sufficient to create a triable issue of fact whether defendants were motivated by race in incorporating plaintiffs into their work force on less favorable terms than would have occurred had the group not been "majority minority".  Boyd at *25.

In Trafficante, Anjelino, and Boyd both minorities and non-minorities were allowed to pursue their claims of racial or gender discrimination because each had pled enough facts to demonstrate an injury-in-fact.  The within case is no different.

There are two reasonable inferences which can be drawn from plaintiffs' general allegations, either one of which will support plaintiffs' discrimination claims.

Plaintiffs' claims, if established, would support an inference that PSP intentionally discriminated against the minority troopers in the King of Prussia barracks and that the White troopers were the unintended victims of PSP's intentional racial discrimination against the minorities.  Plaintiffs' claims, if established, would also support the alternative

-23-

inference that PSP intentionally discriminated against the White troopers at the King of Prussia barracks, as well as the minority troopers, in order to cover up for their intentional discrimination against the minority troopers.  Either interpretation would support plaintiffs' cause of action.

<u>CONCLUSION</u>

Because I find that both the minority and non-minority plaintiffs have pled enough facts to demonstrate an injury-in-fact, I deny Defendant's Motion to Dismiss Count I.  Moreover, I conclude that plaintiffs have sufficiently pled that they are members of a protected class; they are qualified for the position; they suffered an adverse employment action; and that similarly situated persons outside of the King of Prussia barracks were treated more favorably, giving rise to an inference of discrimination.  Thus, I conclude that plaintiffs have stated a claim upon which relief can be granted.[53]

Accordingly, Defendant's Motion to Dismiss Count I is denied.  Defendant's Motion to Dismiss Counts II and III is granted, and those counts are dismissed, by agreement of counsel.

---

[53]    <u>See</u> <u>Jones v. School District of Philadelphia</u>, 198 F.3d 403, 410-411 (3d Cir. 1999).